987 So.2d 1043 (2008)
Phyllis W. NIEDFELDT, Trustee for the Phyllis W. Niedfeldt Living Trust, Appellant,
v.
GRAND OAKS COMMUNITIES, LLC, Appellee.
No. 2006-CA-02040-COA.
Court of Appeals of Mississippi.
May 6, 2008.
Rehearing Denied July 29, 2008.
*1044 Thomas Henry Freeland, Joyce Marie Freeland, Oxford, attorneys for appellant.
S. Duke Goza, Oxford, Joshua J. Wiener, Jackson, Dion Jeffery Shanley, Oxford, attorneys for appellee.
Before MYERS, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. This is an appeal of the denial of a petition for a preliminary injunction by the Chancery Court of Lafayette County. Phyllis W. Niedfeldt sought to prohibit Grand Oaks Communities, LLC (GOC) from constructing a connector road in-between two lots situated within the cul-de-sac in which she lived. In its defense, GOC claimed that the Grand Oaks plat was properly amended in 1996 to include the new road. Following a hearing, the chancery court denied Niedfeldt's petition. Niedfeldt's motion for a new trial was also denied, and this appeal followed. In her *1045 appeal, Niedfeldt raises the following issues:
I. WHETHER THE SUBDIVISION PLAT RECORDED IN 1994 FOR PHASE V OF GRAND OAKS HAS EVER BEEN AMENDED UNDER MISSISSIPPI CODE ANNOTATED SECTION 19-27-31 TO ADD A ROAD ON OR BETWEEN LOTS 142 AND 143 OF THE SUBDIVISION;
II. WHETHER A PETITIONER FOR A PLAT AMENDMENT IS BOUND BY THE TERMS AND FINDINGS OF THE DECREE ON HIS PETITION AND IS BOUND BY THE STATED PURPOSES AND REPRESENTATIONS IN THE PETITION AND IN THE REQUIRED PUBLIC ADVERTISEMENT FOR THE PLAT AMENDMENT;
III. WHETHER THE SCOPE OF THE PLAT AMENDMENT DECREE IS JURISDICTIONALLY LIMITED TO THE PLAT AMENDMENTS PRAYED FOR IN THE PETITION AND THE PURPOSES DESCRIBED IN THE REQUIRED PUBLIC ADVERTISEMENT FOR THE AMENDMENT;
IV. WHETHER A PARTY WHO SIGNS A WAIVER OF PROCESS AND CONSENT TO A PLAT AMENDMENT PETITION: (A) IS ENTITLED TO RELY ON THE STATED PURPOSES AND REPRESENTATION IN THE PETITION AS LIMITING WHAT IS TO BE SOUGHT IN THE PROCEEDING AND (B) HAS WAIVED THE JURISDICTIONAL LIMITS ON THE COURT'S POWER;
V. WHETHER USE OF A 45-FOOT STRIP OF AN ORIGINAL PLATTED LOT OF PHASE V OF THE GRAND OAKS SUBDIVISION AS A ROAD WOULD VIOLATE THE GRAND OAKS PROTECTIVE COVENANTS; AND
VI. WHETHER USE OF A 45-FOOT STRIP AS A ROAD WOULD VIOLATE THE REQUIREMENTS OF THE CITY OF OXFORD LAND DEVELOPMENT CODE.
¶ 2. Finding that the chancery court erred in holding the amended plat included the new road, we reverse and render.

FACTS
¶ 3. In April 1995, Niedfeldt purchased lot 94 and built a home on Majestic Oaks Drive in the Grand Oaks subdivision located in Oxford, Mississippi.[1] The original developer of Grand Oaks was Grand Oaks, Inc. Originally, Grand Oaks was situated on approximately 400 acres and divided into 147 lots. However, in July 1995, Grand Oaks, Inc., purchased an additional 5.6 acres to the south of the subdivision from Dr. George Furr. Dr. James Rayner, an original shareholder in Grand Oaks, Inc., testified that the reason they purchased the additional acreage was to expand a few existing lots and add additional lots.
¶ 4. Following the purchase, Grand Oaks, Inc., employed a surveyor to re-plat the entire area to account for three new lots, as well as the expansion of four lots. Additionally, Dr. Rayner testified that the new plat contained a right-of-way or connector road between lots 142 and 143. The reason for the connector road, according to Dr. Rayner, stemmed from the possible future purchase of an additional 400 *1046 acres of Dr. Furr's land similarly situated south of the Grand Oaks subdivision. In November 1995, Grand Oaks, Inc., filed a "petition to alter and amend [the] original map and plat of Grand Oaks subdivision by enlarging and renumbering certain lots" in the Chancery Court of Lafayette County in accordance with Mississippi Code Annotated section 19-27-31 (1972) in an effort to have the subdivision legally re-platted.
¶ 5. Pursuant to section 19-27-31, Grand Oaks, Inc., named all persons directly interested and published a summons in the Oxford Eagle. Additionally, Grand Oaks, Inc., obtained "waivers of process and entries of appearance" from all affected parties, including Niedfeldt. Subsequently, the chancery court granted the petition in February 1996. Attached to the court's order was a copy of a portion of the lots affected; however, the copy cut off the portion of the plat containing the right-of-way or connector road at issue. Additionally, no amended plat was filed with the Lafayette County land records until a January 17, 2000, plat was filed in 2000, which depicted the right-of-way or connector road.
¶ 6. In May 2004, the shareholders of Grand Oaks, Inc., sold their interest to a new group of investors, namely GOC. Soon after, GOC purchased the additional acreage to the south of Grand Oaks. Subsequent to their purchase, GOC developed additional phases of Grand Oaks and appeared before the City of Oxford Planning Commission several times seeking approval for the amendments and additions to the subdivision. Niedfeldt spoke at many of the hearings, expressing her concern over the "proposed access road becom[ing] a thoroughfare." In early fall of 2005, Niedfeldt saw that some excavation work had begun on the piece of land between lots 142 and 143, and she photographed the road bed.

PROCEDURAL HISTORY
¶ 7. On January 26, 2006, Niedfeldt filed her complaint and a motion for preliminary injunction with the Chancery Court of Lafayette County.[2] In her complaint Niedfeldt requested the court enjoin any construction of a road in-between lots 142 and 143 because such a road violated the protective covenants of Grand Oaks, the statutory procedures for amendment of recorded plats, and the zoning laws and regulations of the City of Oxford. Following the separate answers of both GOC and Grand Oaks, Inc., GOC filed a motion to dismiss. The basis for GOC's motion was that the City of Oxford had "approved amended subdivision plats which depict [the right-of-way or connector road]," and the only way to seek review of the City's zoning decision was through a Bill of Exceptions before the circuit court.
¶ 8. A hearing was conducted in the Chancery Court of Lafayette County in August 2006. Following the testimony of Niedfeldt; Dr. Rayner; and Bernard Johnson, GOC's chief manager who had been involved in the subdivision since 2001, the chancery court issued a ruling in favor of GOC and Grand Oaks, Inc. In its ruling, the chancery court held that the plat amended by the 1996 order included the tract of land between lots 142 and 143. An order soon followed reflecting the chancery court's judgment. Niedfeldt filed a motion for a new trial, which was subsequently denied. This appeal followed.

ANALYSIS
¶ 9. As previously listed, Niedfeldt raises six issues on appeal. The first three issues are consolidated as Issue I.

*1047 I. WHETHER A DEVELOPER'S STATEMENT OF PURPOSE, AS REQUIRED BY MISSISSIPPI CODE ANNOTATED SECTION 19-27-31, JURISDICTIONALLY LIMITS THAT WHICH THE CHANCERY COURT MAY APPROVE FROM A PLAT AMENDMENT REQUEST.
¶ 10. Although the plat filed with the 1996 order was cut off and did not show the portion of the plat now at issue, the chancery court held that the plat approved by the chancery court in 1996 included the 45-foot wide strip between lots 142 and 143. Therefore, the chancery court denied Niedfeldt's complaint and motion for a preliminary injunction.
¶ 11. Niedfeldt argues that several statements made by Grand Oaks, Inc., within their November 1995 petition to amend the plat, and within other related documents, limited what the chancery court had the jurisdiction to approve. She cites Mississippi Code Annotated section 19-27-31 (Rev.2003) and Barrett v. Ballard, 483 So.2d 304 (Miss.1985) in support of her claim.
¶ 12. Section 19-27-31 provides as follows:
If the owner of any land which shall have been laid off, mapped, or platted as a city, town or village, or addition thereto, or subdivision thereof, or other platted area, whether inside or outside a municipality, shall be desirous of altering or vacating such map or plat, or any part thereof, he may, under oath, petition the chancery court for relief in the premises, setting forth the particular circumstances of the case and giving an accurate description of the property, the map or plat of which is to be vacated, or altered, and the names of the persons to be adversely affected thereby, or directly interested therein. The parties so named shall be made defendants thereto, and publication of summons shall be made one time in a newspaper published, or having a general circulation, in the county where the land is situated, and which publication shall clearly state the objects and purposes of the petition.

At any time after the expiration of five days from said publication and the service of process upon the named defendants, the cause or proceeding shall be triable, and the court in term time or the chancellor in vacation may hear the petition and all objections from any person thereto, and may decree according to the merits of the case. However, where all adversely affected or directly interested persons join in said petition, the same may be finally heard and determined by the court or chancellor at any time. If the decree vacate, in whole or in part, or alter the map or plat, it shall be recorded as a deed, and a memorandum thereof noted on the record of the map or plat.
Miss.Code Ann. § 19-27-31 (emphasis added). Niedfeldt calls attention to the emphasized portion of the statute.
¶ 13. In Barrett, the supreme court reviewed the publication requirement. Barrett, 483 So.2d at 305. In that case, the developer sought to vacate a plat situated in Philadelphia, Mississippi. Id. The City joined the petition, and the Chancery Court of Neshoba County issued an order vacating the plat. Id. Two years later, the Barretts filed a petition to set aside the chancery court's ruling, claiming that the developer failed to give proper notice. Id. The chancery court dismissed the Barretts' motion for lack of due diligence. Id. In reviewing the chancery court's dismissal, the supreme court stated that "the chancery court has authority under [s]ection 19-27-31 to alter and vacate maps or plats, or any part thereof, under facts and *1048 circumstances coming within the statute...." Id. at 306 (quoting City of Wiggins v. Breazeale, 422 So.2d 270, 272 (Miss. 1982)) (emphasis in original). Applying the above language to the Barretts' case, the supreme court held that "[t]he required publication was not made in this case, which invalidates the judgment subsequently entered." Id. at 306.
¶ 14. In this case, the publication stated:
The above lawsuit has been filed to alter the plat of Grand Oaks Subdivision in order to enlarge lots 143, 144, 146, and 147, and to add lots 148, 149, and 150 to the official plat. [A] [h]earing has been set for 9:30 a.m. on February 23, 1996, in the County Court House in Oxford, Lafayette County, Mississippi, Judge Don Grist presiding. All parties having [a] direct interest should appear on that day to protect their interests or a judgment may be entered allowing alteration of the official plat of Grand Oaks Subdivision.
Similarly, the only amendments requested in the November 1995 petition included: (1) altering lots 143, 144, 146, and 147 and (2) adding lots 148, 149, and 150. The November 1995 petition stated that the purpose of the amendments was to enlarge existing lots to accommodate houses of a size similar to other houses in Grand Oaks. Additionally, the petition stated that the protective covenants, as well as the existing easements and streets, would remain unchanged.[3]
¶ 15. Niedfeldt argues that the requested relief in the petition, and more specifically, the wording of the publication limited what the chancery court in 1996 had the jurisdiction to approve. Specifically, she argues that because the publication did not include language indicating that Grand Oaks, Inc., was attempting to carve out a 45-foot wide tract of land to be used as a right-of-way or connector road, the chancery court did not have jurisdiction to approve that specific change because the publication did not "clearly state the objects and purposes of the petition" as required by section 19-27-31.
¶ 16. The supreme court's holding in Barrett established the rule of law that the publication requirements of section 19-27-31 are a prerequisite to the chancery court gaining jurisdiction over the matter. In line with Barrett, it stands to reason that because the statute requires the publication to "clearly state the objects and purposes of the petition," the chancery court only has jurisdiction to amend a plat to the extent designated in the stated purpose. Anything outside or excluded from the stated purpose would not come "under the facts and circumstances within the statute." Accordingly, the chancery court would not have the jurisdiction, as otherwise granted by section 19-27-31, to approve the changes.
¶ 17. GOC argues that Barrett and Breazeale do not stand for the proposition that the specifics of the publication are tied to a chancery court's jurisdiction over the matter. GOC claims that had Niedfeldt been reasonably diligent in inspecting the amended plat at the 1996 hearing, she could have opposed the amended plat at that point. We find this argument unpersuasive. Given the statement of purpose listed in the publication and petition, there is no indication that Grand Oaks, Inc., intended to add a connector road that would eventually lead to another development. Therefore, a homeowner in Grand *1049 Oaks, armed with the knowledge gleaned from the publication and petition as to what Grand Oaks, Inc., intended to request, would have no reason to make an in-court appearance to challenge the inclusion of a road that was not included in the listed publication.
¶ 18. In the instant case, we hold that the chancery court erred in finding that the 1996 amendment included the addition of a road between lots 142 and 143. As discussed above, based upon the stated objects and purposes of the petition in the publication, the 1996 chancery court did not have the subject matter jurisdiction to approve changes not listed in the publication. Accordingly, the Grand Oaks plat was never properly amended to include the connector road. Additionally, the chancery court's subsequent denial of Neidfeldt's motion for a preliminary injunction was also made in error. Therefore, we reverse the chancery court's decision and render judgment in favor of Niedfeldt, finding that the 1996 chancery court lacked subject matter jurisdiction to include the proposed road now at issue. Accordingly, the current chancery court erred in holding otherwise. To be clear, we hold that GOC is enjoined from constructing a road in-between lots 142 and 143 as the original Grand Oaks plat neither included such a road, nor was the plat ever legally amended to allow such a road.

II. WHETHER NIEDFELDT'S WAIVER OF PROCESS AND CONSENT TO SUIT SHOULD BE VACATED AS TO THE ADDITION OF THE RIGHT-OF-WAY.
¶ 19. Having held that the 1996 chancery court lacked jurisdiction to approve the road in-between lots 142 and 143, Niedfeldt's remaining issues are moot. Nevertheless, we reach the merits of her claim that the chancery court erred in finding her 1995 waiver valid.
¶ 20. Niedfeldt essentially uses the same details from her argument under the first issue in support of her claim that she did not knowingly waive her right to contest the addition of the new right-of-way. She argues that her waiver should only encompass that which was specifically mentioned in the petition and publication, namely the enlargement and addition of lots.
¶ 21. To establish a waiver of right, "an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived" must be shown. Titan Indem. Co. v. Hood, 895 So.2d 138, 150-51(¶ 60) (Miss. 2004). The chancery court stated that Niedfeldt had a duty to investigate what was included in the waiver she signed. However, she asserts that Grand Oaks, Inc., was bound by what it included in the publication, and it had a duty to know such a limitation was present. Additionally, Niedfeldt argues that it is impossible to show that she had full knowledge concerning the road, as the petition and publication did not disclose such an intention on the part of Grand Oaks, Inc.
¶ 22. During the hearing, Dr. Rayner testified that he believed the attorney handling the 1995 petition visited each landowner in Grand Oaks. He stated that the attorney explained the petition to the landowner and showed them a copy of the proposed amended plat containing the additional road. When asked about this conversation, Niedfeldt testified that she remembered signing the waiver. However, she did not recall speaking to the attorney or seeing the amended plat.
¶ 23. Based upon the uncontradicted testimony of Dr. Rayner that Grand Oaks, Inc.'s attorney informed Niedfeldt of the addition of the road on the amended *1050 plat, we find that the chancery court did not err in holding that Niedfeldt's waiver was valid. However, "[j]urisdiction over the subject matter of a proceeding cannot be conferred by consent or waiver. Thus, subject matter jurisdiction may not be waived and may be asserted at any stage of the proceeding or even collaterally." Harry v. Harry, 856 So.2d 748, 752(¶ 15) (Miss.Ct.App.2003) (citations omitted). As discussed above, the chancery court only had the jurisdiction to approve the requested changes to the plat that were included in the publication and petition pursuant to section 19-27-31. Accordingly, this issue, along with Niedfeldt's remaining issues, are moot.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.
NOTES
[1] The lot was actually purchased through the Phyllis Niedfeldt Living Trust.
[2] Niedfeldt's original complaint named Grand Oaks, Inc., and GOC. However, only GOC submitted a brief on appeal. Additionally, her original brief raised similar issues regarding lot 109 in Grand Oaks, but those issues have since been dropped by Niedfeldt.
[3] Among other conditions, the protective covenants forbade the use or sale of a lot for street purposes without written consent of Grand Oaks' Architectural Control Committee.